IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 11, 2005

## STATE OF TENNESSEE v. RANDALL D. BENNETT

**Direct Appeal from the Criminal Court for Davidson County**
**No. 99-D-2298     Seth Norman, Judge**

_____

**No. M2004-02119-CCA-R3-CD - Filed June 1, 2005**

_____

The defendant, Randall D. Bennett, appeals the revocation of his probation, arguing that the trial court erred in revoking his probation based on the uncorroborated testimony of the defendant's probation officer. Following our review, we affirm the order of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

William A. Lane, Murfreesboro, Tennessee, for the appellant, Randall D. Bennett.

Paul G. Summers, Attorney General and Reporter; Preston Shipp, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Debbie Housel, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

On October 14, 1999, the defendant was charged by the Davidson County Grand Jury with rape of a child. On August 10, 2000, he pled guilty to rape, a Class B felony, and was sentenced to eight years split confinement, with one year of incarceration and the remaining seven years on supervised probation. The defendant's probation was subject to a variety of conditions set out in three different documents. His guilty plea agreement and judgment form indicated that the defendant was to receive mandatory sex offender treatment and was to register with the sex offender registry. The probation order, signed by the defendant on August 10, 2000, contained several conditions including, *inter alia*:

1) I will obey the laws of the United States as well as any municipal ordinances.

. . . .

4) I will work at a lawful occupation and support my dependents, if any, to the best of my ability.

5) I will inform my probation officer before changing my residence or employment. I will get the permission of my Probation Officer before leaving the State.

6) I will allow my Probation Officer to visit my home; employment site, or elsewhere, and will carry out all instructions he/she gives, and report to my Probation Officer as instructed.

7) I will not use intoxicants (beer, whiskey, wine, etc.) of any kind, to excess, or use or have in my possession narcotic drugs or marijuana. I will submit to drug screens as directed.

. . . .

9) I will agree to pay all required fees to the Supervision and Criminal Injuries fund unless waived by appropriate authorities.

Additionally, the probation order contained a special condition under Rule 10 for the defendant to attend a sexual offenders treatment program.

On January 9, 2004, the defendant's probation officer, George Harrien,[1] filed a violation of probation affidavit alleging that the defendant had violated probation order Rule 4 by failing to verify lawful employment since October 7, 2003; Rule 6 by being discharged from officer instructed sex offender treatment; Rule 9 by failing to verify fee payment and owing fees dating back to June 2003; and Rule 10 by failing to properly register with the Tennessee Bureau of Investigation ("TBI") Sex Offender Registry since December 27, 2002, and for being discharged from sex offender treatment.

On January 28, 2004, the trial court entered an amended judgment, sustaining the probation violation and placing the defendant back on supervised probation with the additional condition that the defendant "make restitution of $300 to Dr. David Orvin at rate of $5/week." On March 3, 2004, the defendant signed the Sex Offender Directives which included:

3. I will attend, participate in, and pay for treatment or counseling with an approved treatment provider as deemed necessary by the Board, the Court, or my Officer, per TCA 39-13-706. I will continue in such treatment as instructed for the duration of

---

[1] The probation officer's name is spelled three different ways in the record: Harrien, Harrein, and Herion. We will therefore utilize the spelling in the initial violation of probation affidavit.

supervision unless my treatment provider, in consultation with my Officer, instructs me in writing that I have satisfactorily completed treatment.

. . . .

5. I will submit to and pay for a polygraph assessment and evaluation as instructed by the Board, the Court, my treatment provider, or my Officer. I understand that this will be required at least twice a year.

6. If applicable, I will register within 10 days of my release with the TBI Sex Offender Registry and comply with the TBI monitoring program, per TCA 40-30-103.

7. I will live only in a residence approved by my Officer and agree not to share residence with any person with a history of sexual offense conviction, with exception to residential treatment facilities. I will not move without prior approval from my Officer.

On May 28, 2004, Harrien filed a second violation of probation affidavit alleging that the defendant had violated probation order Rule 1 by failing "to observe TCA 39-13-706 regarding sex offender treatment;" Rule 4 by failing to maintain a lawful occupation; Rule 6 by being discharged from sex offender treatment; Rule 10 and Sex Offender Directives Rule 3 by failing to attend sex offender treatment; and failing to provide proof of $5.00 weekly restitution payments since May 4, 2004, as ordered by the court when the defendant's probation was reinstated.

On July 7, 2004, Harrien filed an amended affidavit, alleging that the defendant had violated probation order Rule 5 by failing to inform his probation officer of a change of address prior to and after moving; Rule 6 by failing to report since May 24, 2004, failing to submit to a polygraph evaluation as instructed, failing to properly register with the TBI Sex Offender Registry, and failing to receive officer approval of his "current unknown residence;" and Rule 10 by failing to properly register with the TBI Sex Offender Registry.

At the defendant's July 7, 2004, revocation hearing, Harrien testified that he had been the defendant's probation officer since January 2003, and, during that time, the defendant had "various periods of non-compliance when it comes to probation and treatment." The defendant originally signed the sex offender directives on January 14, 2000, although that document is not included in the record. The defendant signed another set of sex offender directives on March 3, 2004, under the supervision of Harrien. The defendant was in non-compliance when Harrien first began supervising him, including sporadic office visits as well as sporadic attendance at sex offender treatment meetings. Harrien first filed a violation report on July 25, 2003, detailing the defendant's moving on two occasions without notifying Harrien, traveling outside the county without office supervision, failing to report to Harrien on seven different dates, as well as failing to attend sex offender treatment on six different occasions. He had also not updated his information on the TBI Sex Offender

Registry since December 27, 2002. However, Harrien did not seek a probation violation warrant at that time, but attempted to work with the defendant to "bring him into some form of compliance" in part because the defendant's girlfriend was pregnant. Since then, the defendant had been terminated from his treatment provider, David Orvin of Atlantic Behavioral Systems. Harrien then sought the first probation violation warrant in January 2004, but "spoke on the [defendant's] behalf" at the hearing and assisted the defendant in getting placed back on supervised probation.

After being placed back on probation, the defendant's "pattern of behavior, basically . . . continued." The defendant missed treatment in February, made some of his restitution payments, and obtained sporadic employment "at best." The last time the defendant reported to Harrien was May 24, 2004, and Harrien filed another probation violation report on May 27, 2004, based on the defendant's discharge from treatment due to non-compliance, failure to maintain a lawful occupation, and failure to make weekly restitution payments. On the day of the hearing, Harrien filed an amended affidavit alleging the defendant failed to inform him of a change of address, failed to report as instructed since May 24, failed to submit to a polygraph evaluation, and failed to update his address with the sex offender registry. On cross-examination, Harrien testified that the defendant had been discharged from treatment twice for "[n]on-compliance with treatment directives, sporadic attendance and failure to pay his treatment fees." The defendant had properly registered on the sex offender registry in January 2004 but had been in non-compliance since changing addresses in March, due to his failure to update his information on the registry within the required ten days of the move. Harrien also had no record of the defendant's current address and did not know where the defendant was residing.

The twenty-four-year-old defendant testified that he was working about fifteen hours a week for his pastor as an "[I]nternet consultant" and had been working over fifty hours a week for Labor Finders. However, he was no longer working for Labor Finders and had not reported his church work to Harrien. He had not talked to Harrien lately because the last time he called to report that he would not be able to attend a sex therapy class, Harrien told him he was going to file a probation violation report, which he did. The defendant wanted to meet with Harrien and his counselor, John Brogden, to "tell them . . . what's going on and everything." However, Harrien "didn't want to hear about it" and "wouldn't have the session with" the defendant. He acknowledged he had been discharged from his first treatment program because of non-payment and from the second program for non-attendance, although he contended his attendance was "pretty good." The defendant admitted to moving without notifying Harrien. He also stated, "I know I did wrong. That's why I'm hear [sic] to accept my consequences." The defendant said he stopped reporting to Harrien because "it wasn't going to make a difference if I contacted him or not, I'm still in trouble." On cross-examination, the defendant admitted that within the last three and a half years, he probably had missed sex offender treatment classes about twenty-one times.

Shauna Mason Garris, the defendant's fiancée, testified the defendant had "done nothing but provide for us," referring to herself and her two children. Garris stated she was pregnant with the defendant's child, which was due in about ten weeks. She said that the defendant failed to attend treatment because they could not afford it and had lost a job because he had to be in court for his

January probation violation. She stated that the defendant had asked for "indigency," but was denied because the "DA . . . didn't want to sign off on it." She and the defendant had always notified Harrien of their moves "except for this time." On cross-examination, she acknowledged that she knew when she began dating the defendant and before she had his child that he had "responsibilities to this court" and that he had "promised this Judge that he would do certain things."

At the conclusion of the hearing, the trial court took the matter "under advisement" and gave the defendant two weeks "to find a 40 hour a week job and do everything he is supposed to do." Two weeks later, on July 21, 2004, the defendant reported back to court, and the State advised the court that the defendant was not working, and Harrien advised that the defendant had moved again without notifying him and was still not in compliance with the sex offender registry. The trial court then revoked the defendant's probation and reinstated the original sentence.

## ANALYSIS

The defendant argues the trial court abused its discretion in revoking his probation based only on the "bare allegations made and testimony given by the Probation Officer with no other proof offered." As a result, the trial court's decision was not a "conscientious judgment based on a preponderance of the evidence."

A trial court is granted broad authority to revoke a suspended sentence and to reinstate the original sentence if it finds by the preponderance of the evidence that the defendant has violated the terms of his or her probation and suspension of sentence. Tenn. Code Ann. §§ 40-35-310, -311 (2003). The revocation of probation lies within the sound discretion of the trial court. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991); State v. Stubblefield, 953 S.W.2d 223, 226 (Tenn. Crim. App. 1997); State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). To show an abuse of discretion in a probation revocation case, "a defendant must demonstrate 'that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred.'" State v. Wall, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994) (quoting State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)). The proof of a probation violation need not be established beyond a reasonable doubt, but it is sufficient if it allows the trial court to make a conscientious and intelligent judgment. Harkins, 811 S.W.2d at 82 (citing State v. Milton, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984)). We review this issue, therefore, for an abuse of discretion.

The defendant admitted that he "just quit" reporting to Harrien and that he had moved without notifying him. Additionally, he admitted to being discharged from two treatment programs for non-payment and non-attendance. He also admitted that he had missed approximately twenty-one treatment classes since being placed on probation. His explanation on direct examination as to why he had not complied with the requirements of the sex offender registry is lengthy but unclear:

> The registry, you cannot register without them sending you something. And
> if you do register, like if you do go to the probation officer and register, it still

doesn't make any difference. I mean, it doesn't. You're still going to, I've registered through that whole time through the last violation at George [Harrien's] office, sending once a week maybe, just to see if they could get me on there and correct it. They said that's, that ain't the way they do it. They have to mail you something every three months and if you don't receive it, it's not their fault. And there is no way of changing that.

. . . .

I could register, but it didn't do any good. I mean he has sheets that, the same sheets they actually mail you. But if you give it to your probation officer and he puts it in the, you know, the mail, and you know he is standing beside you, it still doesn't matter.

We conclude that there was "substantial evidence to support the conclusion of the trial judge," consisting not only of the testimony and the sworn affidavits of the probation officer, but the admissions and testimony of the defendant as well. Wall, 909 S.W.2d at 10. The defendant's probation officer testified to several violations, at least three of which were admitted by the defendant. Thus, the evidence that the defendant had violated his probation was not just "substantial;" several violations were admitted. We note, also, that the defendant was given at least two "second chances" by the trial court, which showed an abundance of patience. Therefore, we conclude that the trial court did not abuse its discretion in revoking the defendant's probation.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the trial court's revocation of the defendant's probation and reinstatement of his original sentence.

ALAN E. GLENN, JUDGE

-6-